UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

|   |   |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) CASE NUMBER: 1:22-CR-7 |
| | ) |
| XAVIER M. SCOTT, | ) |
| a/k/a XZAVIER SCOTT | ) |
| | ) |
| Defendant. | ) |
| | ) |

# OPINION AND ORDER

Indiana State Police Trooper Kristopher Coffey (Tpr. Coffey) pulled over Xavier Scott (Scott) for speeding. A subsequent search of the vehicle uncovered a firearm, a duffel bag containing drug trafficking indicators, a lunch pail with Ziploc bags containing white powder residue, and five cell phones. Scott has moved to suppress this evidence (ECF No. 23), contending that the warrantless search violated the Fourth Amendment. The Court conducted an evidentiary hearing on January 10, 2023, (ECF No. 27) and the parties have fully briefed the motion. (ECF Nos. 30, 31, and 32). Because the Court finds the search did not violate Scott's Fourth Amendment rights, the Motion to Suppress will be DENIED.

# DISCUSSION

### a. Factual Background

While working road patrol duty on August 3, 2021, Tpr. Coffey observed a silver Mercedes driving faster than the lawful speed of 70 mph on I-469[1] in Fort Wayne, Indiana. Tpr. Coffey is a

---

[1] I-469 is a four-lane concrete median divided highway.

23-year veteran of the Indiana State Police (ISP).[2] On this day, he was operating a semi-marked vehicle equipped with an in-car camera and wore a police uniform outfitted with a body camera.[3]

To help him assess vehicle speeds, Tpr. Coffey used a properly calibrated Custom Signals Pro Laser 3 device. Using this device to record the speed of the Mercedes, Tpr. Coffey confirmed his observation that the Mercedes was speeding, as the readout from the laser device showed the car was moving at 93 mph.[4] Tpr. Coffey then began pursuit of the vehicle, finally catching up to it at mile marker 6. While in pursuit, Tpr. Coffey observed the Mercedes cross the yellow fog line. (Evid. Hrg. Tr., ECF No. 29 at 11: the Mercedes drove "left of the lane and cross[ed] the yellow fog line."). He activated his emergency lights, sirens, and spotlight and the Mercedes returned to its lane, tapped its brakes a few times, and a half a mile later, slowed to a stop. (*Id.*). All told, the in-car camera shows that Scott traveled 38 seconds from the time Tpr. Coffey activated his emergency lights until the time the Mercedes came to a complete stop. Tpr. Coffey testified that he believed the driver was slow to stop, and that is why he activated his sirens. He also testified that, in his experience, a vehicle that leaves its lane and then stops slowly when pursued may reflect the vehicle's driver being impaired.

Tpr. Coffey approached the vehicle on the passenger side and spoke to the driver, later found to be Scott. Scott immediately stated that he was on his way to St. Louis because his sister had been assaulted. (Evid. Hearing Tr. at 13; Gov't Ex. 2, Body Camera at 2:17: Scott stating that

---

[2] Tpr. Coffey has worked as a line supervisor, a sergeant, a member of the S.W.A.T. team and as a trooper tasked with road patrol duties.

[3] A copy of both the in-car recording and the body camera recording were admitted in evidence at the hearing.

[4] In Indiana, speeding is a traffic infraction. Ind. Code §9-21-5-1.

his sister's "boyfriend jumped on her."). Tpr. Coffey obtained Scott's driver's license[5] and explained the reason he stopped the vehicle. During this interaction, Tpr. Coffey noticed that Scott's eyes appeared bloodshot and watery. (*Id.* at 14). He also engaged Scott about his travel, learning that Scott drove to Fort Wayne from Georgia, had been visiting a friend in Fort Wayne for 6 hours near Pontiac Street[6] and was heading back to Georgia when he received a phone call that he needed to come to St. Louis. When asked about this story, Tpr. Coffey testified, "[i]t seemed strange to me that someone would drive from Georgia and only be in Fort Wayne for six hours, and then turn around and drive straight back to Georgia." (Evid. Hr'g Tr. at 16). During his engagement with Scott, Tpr. Coffey testified that he smelled a faint odor of burnt marijuana coming from the vehicle. (*Id.*).[7]

When asked on cross-examination if Scott answered his questions appropriately and was cooperative, Tpr. Coffey said that he did. (Evid. Hr'g. Tr. at 41). Even so, based on the appearance of Scott's eyes, the odor of marijuana in the vehicle, and the way he was driving, Tpr. Coffey believed Scott was driving while under the influence or possessed illegal substances inside the vehicle, which are misdemeanor offenses in Indiana. Ind. Code §§ 9-30-5-2 (operating while intoxicated), 9-30-5-1(c) (operating under the influence of a controlled substance), 35-48-4-11 (possession of marijuana); (Evid. Hr'g Tr. at 15).

At that point and before returning to his police vehicle, Tpr. Coffey called for officer assistance to ensure officer safety. Tpr. Coffey first indicated that he planned to perform a vehicle

---

[5]Scott had a Georgia-issued driver's license.

[6]Scott showed Tpr. Coffey a location of where he had been in Fort Wayne on his phone. (Gov't Ex. 2, 4:35).

[7]The record, as developed during the evidentiary hearing, is undisputed that Tpr. Coffey was trained to distinguish burnt and raw marijuana smells. (Evid. Hr'g Tr. at 14-15).

search based on the odor of marijuana emanating from the vehicle. (Evid. Hr'g Tr. at 15). Later, when asked if there was any other investigation he intended to conduct, Tpr. Coffey testified that he intended to perform field sobriety tests and his preference is to have a second officer assist with these tests, if available. (Evid. Hr'g Tr. at 19-20). Because he had worked with Sergeant Tyson Waldron (Sgt. Waldron) regularly and he believed he was close to the scene, Tpr. Coffey specifically requested him to arrive on the scene. (Evid, Hr'g Tr. at 54). As will be relevant later, Sgt. Waldron works with a K-9 partner certified to conduct narcotics searches.

Upon his return to his vehicle, Tpr. Coffey provided dispatch with the license plate number of the Mercedes. He then pulled up a mapping system that identifies the locations of all officers in the area. By looking at this map, Tpr. Coffey could determine where Sgt. Waldron and his K-9 were. When pressed by defense counsel, Tpr. Coffey admitted that "he knew it was going to take a while for the K-9 officer to get there." (Evid. Hr'g Tr. at 44). He then began processing the traffic citations. As part of this process, he checked the status of Scott's Georgia driver's license, and entered information on Scott and the violations associated with the traffic citations.

Before completing the citations, Tpr. Coffey returned to Scott's vehicle to gather more information about Scott's sister and to determine whether she needed assistance. Scott could not provide her address and had not spoken to her. Scott asked for the St. Louis police department phone number. Tpr. Coffey returned to his car to retrieve this information but could not obtain it without information about Scott's sister's location given the many precincts in St. Louis. During these later interactions with Scott, Tpr. Coffey continued to observe that Scott's eyes were watery and bloodshot and he continued to smell marijuana. He also noted that Scott was providing rambling and inconsistent statements. (Evid. Hr'g Tr. at 18-19).

4

About 20 minutes into the stop, Tpr. Lemburg arrived to assist Tpr. Coffey at the scene.[8] Tpr. Coffey advised Tpr. Lemburg about Scott's story that his sister was assaulted and as for the marijuana smell, told him that "there's like a faint odor, I can't tell." (Gov't. Ex. 2 at 22:22). Tpr. Coffey explained that he intended to perform field sobriety tests and when "[Sgt. Waldron] gets here, we can walk him around." (*Id.* at 20:32). Tpr. Coffey then asked Scott to exit the vehicle so that field sobriety tests could be conducted. When Scott exited the vehicle, Tpr. Coffey smelled the odor of marijuana on Scott's clothing.

Meanwhile, nearly 25 minutes from the outset of the stop, Sgt. Waldron arrived on scene with his certified K-9 partner, Zeus.[9] Sgt. Waldron offered to walk Zeus around the vehicle to conduct a free air sniff. Believing the free air sniff was warranted based on his observations of Scott, Tpr. Coffey authorized the free air sniff while he continued speaking with Scott. Sgt. Waldron walked Zeus around the vehicle and he immediately alerted at the right rear bumper.[10] Sgt. Waldron then told Tpr. Coffey that "[Zeus] doesn't usually hit on the trunk." (Gov't Ex. 2, at 25:12; Gov't Ex. 4, Sgt. Waldron body camera, 3:26). After Zeus' positive alert on Scott's vehicle, Tpr. Coffey began searching the car. Tpr. Coffey located a Taurus 9-millimeter handgun in between the driver's seat and the center console and a duffel bag in the backseat that contained a black digital scale, a box of sandwich baggies, and deodorizing spray. In addition, a red lunch pail with additional Ziploc baggies containing a white powder residue and additional baggies used to

---

[8] Times provided are estimations based on Gov't's Ex. 2, Tpr. Coffey's body camera.

[9] A copy of Zeus's certification for narcotics detection for 2020 was entered into evidence at the hearing. (Gov't Ex. 3).

[10] Scott does not contest the free air sniff nor does he contend that it was not conducted properly. For this reason, the Court will also presume that Sgt. Waldron and Zeus conducted a proper free air sniff.

mask the odor of narcotics. (Evid. Hr'g Tr. at 23). Five cell phones were also found in the vehicle and a marijuana stem and marijuana shake were found on the floor.[11]

### b. Analysis

The Fourth Amendment to the United States Constitution ensures that people are "secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. When a police officer has reasonable suspicion that a traffic violation has occurred, the officer may stop the vehicle within the bounds of the Fourth Amendment. *Navarette v. California*, 572 U.S. 393 (2014). Reasonable suspicion for a traffic stop requires law enforcement to possess specific, articulable facts that an individual was violating a traffic law. *See United States v. Cole*, 21 F.4th 421, 427 (7th Cir. 2021).

The parties agree that Tpr. Coffey had sufficient legal justification to conduct a traffic stop of the Mercedes. That said, an otherwise permissible traffic stop may violate the Fourth Amendment if law enforcement unreasonably prolongs the stop. See *Illinois v. Caballes*, 543 U.S. 405, 407 (2005) (citing *United States v. Jacobsen*, 466 U.S. 109, 124 (1984)). The permissible length of a traffic stop is context specific. See *Rodriguez v. United States*, 575 U.S. 348, 354 (2015) (citations omitted).

Scott asserts that the extended wait for the K-9 officer to arrive unlawfully prolonged his traffic stop in violation of the Fourth Amendment. As he views it, a dog sniff is not part of an officer's mission in a traffic violation case and waiting for the K-9 in this case unlawfully prolonged the traffic stop. *See Rodriguez,* 575 U.S. at 355 (noting that ordinary inquiries incident to the traffic stop include checking the driver's license, warrant checks, inspecting an automobile's

---

[11] Scott contests that a marijuana stem and marijuana shake were found in the vehicle. Because the results of the search are irrelevant to the legal issue of whether the search was legal, the Court accepts the officers' testimony that these items were found during the search.

registration). Thus, because there was no reason to detain him for anything but a traffic violation, Scott urges the Court to find the search in violation of the Fourth Amendment.

The Government, in turn, advances two grounds as justification for Scott's prolonged detention: reasonable suspicion and probable cause. The Government contends that once Tpr. Coffey approached the vehicle and smelled marijuana, he had both reasonable suspicion and probable cause to believe that illegal drugs were inside the vehicle, making the length of the detention irrelevant. The Court turns now to these arguments.

The legal standard for traffic stops and K-9 drug searches is clear:

> A traffic stop can become unlawful if it is prolonged beyond the time reasonably required to complete the mission of issuing a warning ticket. It is well-established a dog sniff of a vehicle's exterior only for illegal drugs during a lawful stop for a traffic violation does not infringe Fourth Amendment rights, even absent reasonable suspicion of drugs. But it is also well-established a stop justified only by a traffic violation becomes unlawful if it is prolonged beyond the time reasonably required to complete the stop's original mission.... Absent independent reasonable suspicion to justify the sniff, the critical question is not whether the sniff occurs before or after the officer issues the warning, but whether conducting the sniff "prolongs"—i.e., adds time to—the stop.

*United States v. Lewis*, 920 F.3d 483, 491 (7th Cir. 2019) (quoting *Rodriguez*, 575 U.S. at 357 and *Caballes*, 543 U.S. 405 (cleaned up)).

In *Rodriguez*, the police had finished writing a warning ticket, but still detained two men for an extra seven- or eight-minutes waiting for backup and a drug sniff. That extended stop was unlawful. *Id.* 575 U.S. at 357. In *United States v. Gholston*, 1 F.4th 492, 498 (7th Cir. 2021), the police detained a man on a pretextual stop, took eight minutes to issue a first ticket, all the while urging backup to hurry, issued that ticket, then began work on a second ticket, the grounds for which was discovered only after the first was complete. *Id.* at 496. Backup arrived and the drug sniff alerted to drugs while the second ticket was printing. *Id.* at 497. The Seventh Circuit affirmed

7

the district court's finding that the stop was not prolonged to conduct the drug sniff. *Id.* at 498 ("This is not a case in which an officer completes the activities for a stop and then detains the suspect longer in order to allow time for a K9 officer to arrive.").

The Government asserts that the holding in *Rodriguez* does not enter into the analysis because probable cause existed and, if not, reasonable suspicion did, to believe that Scott was transporting or possessing drugs in the vehicle. As the Government argues, this justified the wait for the K-9 officer without violating the *Rodriguez* principle.

Admittedly, the line between facts supporting probable cause vis-à-vis those that support reasonable suspicion are often murky. But the Court need not delve into that distinction here. Reasonable suspicion is enough, *Lewis*, 920 F.3d at 491, and that standard is met.[12] Tpr. Coffey testified credibly that he smelled burnt marijuana in the vehicle, that Scott had bloodshot and watery eyes, he provided rambling and inconsistent statements, and that he had an "odd" story. Combined with his reckless driving, the Court has little difficulty concluding that Tpr. Coffey possessed reasonable suspicion to expand the stop beyond its initial traffic-enforcement mission. From the collective facts, "a trained officer draws inferences and makes deductions—inferences and deductions that might well elude an untrained person." *United States v. Cortez*, 449 U.S. 411, 418 (1981). Indeed, the totality of the circumstances gave the officer "a minimal level of objective justification"—in other words, reasonable suspicion—to believe contraband was in the car and to

---

[12] The Seventh Circuit has also routinely held that the odor of cannabis alone creates probable cause to search a vehicle. *See United States v. Franklin*, 547 F.3d 726, 733 (7th Cir. 2008) ("A police officer who smells marijuana from a car has probable cause to search that car.") (citing *United States v. Wimbush*, 336 F.3d 947, 951 (7th Cir. 2003)); *see also United States v. Kizart*, 967 F.3d 693 (7th Cir. 2020) (odor of burnt cannabis after traffic stop for speeding provided probable cause to search vehicle).

prolong the stop to await the arrival of a canine unit to investigate further. *United States v. Perkins*, 348 F.3d 965, 970 (11th Cir. 2003).

Scott quibbles with Tpr. Coffey's testimony that there was only a faint smell of marijuana and his statements to Tpr. Lemburg upon his arrival that he "can't tell" if the smell is marijuana. He contends that Tpr. Coffey's testimony is incredible and, even if credited, the lack of certainty cannot support probable cause or reasonable suspicion to search the vehicle. He also argues that Tpr. Coffey was in no particular hurry to complete the traffic stop, as he retained Scott's license and registration past the time necessary to complete the traffic mission. On neither point can the Court agree.

First, as for Tpr. Coffey's testimony, credibility determinations made by a district court are entitled to "special deference" because of the ability to "listen[ ] to the testimony directly and observe[ ] the demeanor of the witnesses." *United States v. Simon*, 937 F.3d 820, 829 (7th Cir. 2019). The Court listened to Tpr. Coffey's testimony, observed his demeanor and finds him believable. He testified that he smelled marijuana from his position outside the passenger side of the vehicle and it was after this – and before returning to his vehicle to complete the traffic mission – that he called for another officer to assist. This reflects his belief that the smell of marijuana emanating from the vehicle gave him authority to search the vehicle. While the Court is "not a rubber stamp for incredible claims of superhuman olfactory senses," *United States v. Letner,* 2022 WL 17592444 (N.D. Ind. December 13, 2022), here, the Court has no reason to disbelieve Tpr. Coffey's testimony.

Moreover, even if Tpr. Coffey had doubts about whether he smelled marijuana,[13] when Tpr. Coffey's olfactory observations are combined with the other suspicious circumstances set out

---

[13] Reasonable suspicion can be established with "information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from

above, the Court finds there is more than enough to support reasonable suspicion. *See United States v. Brown*, 188 F.3d 860, 864–65 (7th Cir. 1999) (the smell of marijuana in a vehicle "enhanced" the officer's belief that a defendant might be involved with drugs, which in turn was a factor in the reasonable suspicion analysis); see also, *United States v. Colbert*, 54 F.4th 521, 528 (7th Cir. 2022) (odor of marijuana properly considered in reasonable suspicion analysis because "[l]ike alcohol, marijuana is an intoxicating substance, and the odor of marijuana in a vehicle or on a suspect raises concern for officers that a defendant may act in an unpredictable and dangerous manner.").

As for Scott's argument that Tpr. Coffey slow walked through the traffic mission to buy time for the K-9 to arrive, the police are not constitutionally required to move at top speed or as fast as possible. *See, e.g., United States v. Sharpe,* 470 U.S. 675 (1985). "At a traffic stop, the police can occasionally pause for a moment to take a breath, to think about what they have seen and heard, and to ask a question or so." *United States v. Hernandez,* 418 F.3d 1206, 1212 n.7 (11th Cir. 2005). Here, additional circumstances arose once Tpr. Coffey stopped Scott for the traffic infraction that signaled the possibility of another crime and justified prolonging the stop. Tpr. Coffey's decision to retain Scott's license and registration confirms his belief that he was properly detaining Scott based on his interactions with him. Whether Tpr. Coffey wrote tickets at breakneck speed or not at all, retained Scott's license and registration, or created reasons to delay is irrelevant once Tpr. Coffey had reasonable suspicion to detain Scott further. Thus, in this instance, the Court places little weight on these facts.

In sum, the Court finds that reasonable suspicion justified the prolonged nature of the traffic stop to enable officers to investigate whether a drug crime was being committed. Because the

---

information that is less reliable than that required to show probable cause." *Alabama v. White*, 496 U.S. 325, 330 (1990).

officer had sufficient justification to detain Scott to investigate his potential drug activity, the Court finds that Scott's detention during the traffic stop was not unlawfully prolonged and did not violate the Fourth Amendment. The Motion to Suppress is DENIED.

## **CONCLUSION**

For the reasons above, the Defendant's Motion to Suppress (ECF No. 23). The Court will set this matter for trial by separate entry.

SO ORDERED on May 30, 2023.

s/ Holly A. Brady<br>
JUDGE HOLLY A. BRADY<br>
UNITED STATES DISTRICT COURT